**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | EDWARD A. SAVARIA, Jr. | : | Chapter 7 |
| | SUZANNE M. SAVARIA, | : | |
| | | : | |
| | Debtors | : | Bky. No.  14-11741 ELF |
| | | : | |

# **O R D E R**

AND NOW, WHEREAS:

A. On **May 19, 2014**, First Tennessee Bank National Association ("First Tennessee") filed a reaffirmation agreement between First Tennessee and the Debtors ("the First Tennessee Reaffirmation Agreement") (Doc. # 13).

B. By Order dated **May 23, 2014** and entered on **May 28, 2014** (Doc. # 14), and pursuant to 11 U.S.C. §524(m), the court determined that there was a presumption that the First Tennessee Reaffirmation Agreement would impose an undue hardship on the Debtors. .

C. On **May 29, 2014**, Fifth Third Bank ("Fifth Third") filed a reaffirmation agreement between Fifth Third and the Debtors ("the Fifth Third Reaffirmation Agreement") (Doc. # 15).

D. By Order dated **June 5, 2014** and entered on **June 6, 2014** (Doc. # 18), and pursuant to 11 U.S.C. §524(m), the court determined that there was a presumption that the Fifth Third Reaffirmation Agreement would impose an undue hardship on the Debtors. .

E. A hearing on both the First Tennessee Reaffirmation Agreement and the Fifth Third Reaffirmation Agreement was held on **July 2, 2014**.

F. The Debtors did not appear at the hearing.

G. Counsel for First Tennessee appeared at the hearing and offered argument in support of the

    First Tennessee Reaffirmation Agreement.

H.  Counsel also filed a short memorandum in support of First Tennessee's position on **July 3, 2014**.[1]

---

[1]   First Tennessee's legal argument in support of the reaffirmation agreement is simple. On its face, the Debtors' §524(k)(6)(A) Statement and the Reaffirmation Cover Sheet both state that the Debtors' monthly income exceeds their expenses. That statement is consistent with the Debtors' Schedules I and J disclosures. Without quite stating it in this fashion, First Tennessee's position is that there is no presumption of undue hardship as a matter of law and, accordingly, the court lacks authority to review and disapprove the reaffirmation agreements.

    Certainly, one prong of First Tennessee's argument is correct. If there is no presumption of undue hardship, the court lacks the authority to review and disapprove the reaffirmation agreements under 11 U.S.C. §524(m). Thus, the issue in this matter boils down to the question whether, in a case in which a debtor's §524(k)(6)(A) Statement is consistent with the prior Schedule I and J income and expense disclosures, the court is bound to accept, without any further scrutiny, the accuracy of the monthly income and expense disclosures in the §524(k)(6)(A) Statement. Ultimately, then, First Tennessee's position is that the court's review of the §524(k)(6)(A) Statement is merely mechanical.

    Although First Tennessee's reading of the statute is not entirely unreasonable and finds support in a reported decision, see In re Wilson, 363 B.R. 220, 224 (Bankr. D.N.M. 2007) ("the presumption of undue hardship which mandates court "review" arises only from the numbers in § 524(k)(6)(A)"), I am not persuaded that the court's review of a reaffirmation agreement under §524(m) is as circumscribed as First Tennessee (or the Wilson court) suggests. I considered much the same question in In re Laynas, 345 B.R. 505 (Bankr. E.D. Pa. 2006) and concluded then that, given the history of Congress' treatment of reaffirmation agreement in §524(c) and the purpose behind the 2005 enactment of §524(m), "it is inconceivable that Congress intended that courts be barred from evaluating the accuracy of the information in the §524(k)(6)(A) Statement, at least when the information conflicts with the disclosures previously made by the debtor under oath in Schedules I and J." Id. at 514. There have been no legislative or case law developments that cause me to reconsider that conclusion.

    By its very nature, judicial review of reaffirmation agreements is a kind of "paternalistic" power that Congress has delegated to the bankruptcy court. Through the reaffirmation process, bankruptcy courts are authorized and obligated to override the decision of a legally competent adult (i.e., the debtor) to enter into a post-petition contract when the bankruptcy court concludes it understands the debtor's best interests better than the debtor does. The process exists because Congress concluded that, at least in some cases, the court needs to protect the debtors from themselves. I remain convinced that Congress did not intend that judicial review of reaffirmation agreements be controlled entirely (and, in a worst case scenario manipulated) by the very debtors Congress intended to protect, based solely on the face of the financial disclosures made to the court. To fulfill the statutory purposes of §522(c) and (m), the court necessarily must have the power to dig below the surface of the financial disclosures made by the debtor.

    11 U.S.C. §522(m) instructs that the determination whether the reaffirmation will impose

(continued...)

I.  Upon further review of the financial information set forth in the Debtors' schedules and statements, the court has determined that its initial determination that a presumption of undue hardship exists was factually erroneous.[2]

It is therefore **ORDERED** that:

1. The Order dated **May 23, 2014** and entered on **May 28, 2014** (Doc. # 14) is **VACATED**.

2. The Order dated **June 5, 2014** and entered on **June 6, 2014** (Doc. # 18) is **VACATED**.

**Date: July 24, 2014**

**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE**

---

[1](...continued)
an undue hardship on a debtor is primarily a function of the adequacy of the debtor's cash flow. Insufficient cash flow can create a substantial risk of a post-reaffirmation default that, in turn, can impose an undue hardship by leaving the debtor personally liable and unable to afford to pay a debt that otherwise would be discharged in the bankruptcy case. Given this focus on the debtor's income and expenses and the core debtor protective purpose of the Code reaffirmation provisions, in my view, Congress intended to grant bankruptcy judges broad discretion and to permit them to holistically evaluate a debtor's financial disclosures when determining whether a presumption of undue hardship exists under §522(m).

[2] Although I have rejected First Tennessee's legal argument, see n.1, supra, I agree with its ultimate position – that no presumption of undue hardship existed and that the §522(m) hearing was unnecessary.

My initial determination that a presumption of undue hardship existed was made after consideration of the Debtors' bankruptcy schedules (including Schedules I and J) and the Debtors' financial disclosures made in the §524(k) reaffirmation documents. However, in reviewing the record following the July 2, 2014 hearing, I became aware that the Debtors had also filed a "Business Income and Expenses Statement" (as instructed by Paragraph 8.a. of Schedule I). The Business Income and Expenses Statement, which functionally serves as an attachment to Schedule I, was obscured during my initial review because it was filed out of order (behind the Debtors' verification of their Schedules A-J). Based on the additional information included in the Business Income and Expenses Statement, I have reconsidered my earlier determination and now conclude that no presumption of undue hardship existed.